**Christopher ROBERTS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–08–00596–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 10, 2010.

Rehearing Overruled Aug. 5, 2010.

Discretionary Review Refused
Dec. 8, 2010.

Stanley L. Schwieger, Waco, for appellant.

Matthew McGregor Boyle, Fairfield, for the State.

Panel consists of Justices YATES, SEYMORE, and BROWN.

## OPINION

LESLIE B. YATES, Justice.

Appellant Christopher Roberts was convicted of possession of a controlled substance and sentenced to fifty years' imprisonment. In four issues, appellant contends that the evidence is legally and factually insufficient to support his conviction, the trial court's punishment charge contained error, and the State failed to provide him with adequate notice of an enhancement allegation. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Shortly after midnight on June 27, 2005, appellant and two acquaintances—Christopher Sheppard and Travoy Hollie—left a club in a vehicle driven by appellant and registered to appellant's wife. Officer Wade Harrison of the Teague Police Department stopped appellant's vehicle after appellant failed to use a turn signal while turning at an intersection. During the traffic stop, Officer Harrison obtained appellant's consent to search the vehicle. Officer Harrison discovered a clear plastic bag containing an off-white powder substance in one of the pockets of a jacket lying on the back seat. A field test of the substance performed by Officer Harrison indicated a positive result for the presence of cocaine. None of the vehicle's occupants claimed possession of the plastic bag. Officer Harrison informed the occupants he would have to arrest each of them if no one claimed possession. A few minutes later, Officer Harrison asked appellant if the drugs belonged to him and appellant responded, "Yeah I'll take the charge." Following this statement, Officer Harrison arrested appellant. Officer Corey House assisted Officer Harrison during the stop of appellant's vehicle. Officer House observed appellant's vehicle while it was parked outside the club prior to the traffic stop. Officer House noticed a steady stream of foot traffic to and from the vehicle's driver's side door. Based on his knowledge and experience, Officer House believed appellant was dealing drugs from the vehicle. Following appellant's arrest, the substance contained in

the plastic bag was sent to the Texas Department of Public Safety Crime Lab, where forensic testing showed it to be 21.26 grams of cocaine.

Appellant was subsequently indicted with the offense of possession with intent to deliver cocaine in the amount of four grams or more but less than two-hundred grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a), (d) (Vernon Supp.2009). Appellant pleaded "not guilty" to the charged offense, and the case proceeded to trial. At the conclusion of the guilt/innocence phase of trial, the trial court included an instruction in the jury charge for the lesser-included offense of possession of cocaine in an amount more than four but less than two-hundred grams in addition to an instruction regarding the charged offense of possession with intent to deliver. *See id.* §§ 481.112, 481.115(a), (d). Appellant was convicted of the lesser-included possession offense. The jury was unable to reach a unanimous punishment verdict, however, and the trial court declared a mistrial. Approximately one month later, a second jury was empanelled and assessed appellant's punishment at fifty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.[1]

## II. ANALYSIS

### 1. Legal Sufficiency of the Evidence

In his first issue, appellant contends that the evidence is legally insufficient to show that he possessed the 21.26 grams of cocaine recovered by Officer Harrison. When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact

could have found the essential elements of the charged offense beyond a reasonable doubt. *Salinas v. State,* 163 S.W.3d 734, 737 (Tex.Crim.App.2005). We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We may not re-weigh the evidence and substitute our judgment for that of the fact-finder. *King v. State,* 29 S.W.3d 556, 562 (Tex.Crim.App.2000). In our review, we afford great deference to the fact-finder's responsibility to fairly resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences regarding basic to ultimate facts. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Crim.App.1996). We presume the fact-finder resolved any evidentiary conflicts in favor of the prosecution and defer to that resolution. *Id.* at 133 n. 13.

■ A person commits an offense if he knowingly or intentionally possesses between four and two-hundred grams of cocaine, including adulterants or dilutants. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.115(a), (d). To prove possession, the State must show the accused (1) exercised control, management, or care over the contraband and (2) knew the substance possessed was contraband. *Evans v. State,* 202 S.W.3d 158, 161 (Tex. Crim.App.2006); *Cuong Quoc Ly v. State,* 273 S.W.3d 778, 781 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd). Possession may be proved through either direct or circumstantial evidence. *Poindexter v. State,* 153 S.W.3d 402, 405–406 (Tex.Crim. App.2005); *see also Rice v. State,* 195 S.W.3d 876, 881 (Tex.App.-Dallas 2006,

1. This appeal was transferred to this court from the Tenth Court of Appeals. In cases transferred from one court of appeals to another, the transferee court must decide the case in accordance with the precedent of the

transferor court if the transferee court's decision would have been inconsistent with the precedent of the transferor court. *See* TEX R.APP. P. 41.3.

pet. ref'd) (stating jury could infer knowing or intentional possession of contraband).

■ When, as here, the accused is not in exclusive possession or control of the place where contraband is discovered, the State must show additional facts and circumstances linking[2] the accused to the contraband to show the accused's knowledge of or control over the contraband. *Poindexter*, 153 S.W.3d at 406; *Grisso v. State*, 264 S.W.3d 351, 355 (Tex.App.-Waco 2008, no pet.). We consider the totality of the circumstances when determining whether the accused is linked to the recovered contraband. *See Hyett v. State*, 58 S.W.3d 826, 830 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd). The accused's connection with the contraband must be "more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–06. The accused's presence at the scene where contraband is found is insufficient, by itself, to establish possession. *Evans*, 202 S.W.3d at 162. However, presence or proximity combined with other direct or circumstantial evidence (e.g., "links") may be sufficient to establish the elements of possession beyond a reasonable doubt. *Id.* Additionally, when narcotics are secreted, the State must address whether the accused knew of the existence of the secret place and its contents. *Medina v. State*, 242 S.W.3d 573, 576 (Tex.App.-Waco 2007, no pet.).

■ Reviewing courts have developed several factors showing a possible link between the accused and contraband, including: (1) the accused's presence when the search was conducted, (2) whether the contraband was in plain view, (3) the accused's proximity to and the accessibility of the contraband, (4) whether the accused was under the influence of narcotics when arrested, (5) whether the accused possessed other contraband or narcotics when arrested, (6) whether the accused made incriminating statements when arrested, (7) whether the accused attempted to flee, (8) whether the accused made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether the accused owned or had the right to possess the place where the contraband was found, (12) whether the contraband was found in an enclosed place, (13) whether the accused was found with a large amount of cash, and (14) whether the conduct of the accused indicated a consciousness of guilt. *See Cuong Quoc Ly*, 273 S.W.3d at 781–82; *Grisso*, 264 S.W.3d at 355. The number of linking factors present is not as important as the "logical force" they create to prove the accused knowingly or intentionally possessed the controlled substance. *Evans*, 202 S.W.3d at 162; *see also Roberson v. State*, 80 S.W.3d 730, 735 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (recognizing proof of links between the accused and contraband "generates a reasonable inference that the accused knew of the contraband's existence and exercised control over it").

■ There are several factors linking appellant to the cocaine recovered in this case. As the driver of the vehicle at the time Officer Harrison performed the traffic stop, appellant was in sole control of the vehicle. The vehicle was registered in appellant's wife's name, and appellant's wife testified that she and appellant owned the vehicle together. Appellant thus had ownership of the vehicle and had the right to possess the place where the contraband was found. Appellant consented to the search of the vehicle, and the 21.26 grams of cocaine were found in a jacket belonging to appellant's wife. During the course of

2. While reviewing courts previously referred to the necessary connection between an accused and contraband as "affirmative links," we now refer to these connections simply as "links." *See Evans,* 202 S.W.3d at 161 n. 9.

the traffic stop, appellant told Officer Harrison "Yeah, I'll take the charge" when asked whether the drugs belonged to him. The jury was shown a video recording of this exchange taken from Officer Harrison's dashboard camera, and Officer Harrison identified appellant as the individual in the video claiming possession of the cocaine. At trial, appellant admitted making this incriminating statement to Officer Harrison. Appellant was also carrying a large amount of cash at the time of his arrest,[3] and Officer House testified that he believed appellant was involved in drug transactions due to the steady stream of foot traffic to and from appellant's vehicle door while the vehicle was in the club's parking lot. We conclude this evidence establishes sufficient facts and circumstances linking appellant to the cocaine, thus showing appellant's knowledge of and control over the contraband. *See Poindexter,* 153 S.W.3d at 405; *Grisso,* 264 S.W.3d at 354. The jury could also conclude that appellant was aware of the place where the drugs were secreted and the existence of the contraband from his statements to Officer Harrison that the jacket belonged to his wife and that he claimed ownership of the cocaine. *See Medina,* 242 S.W.3d at 576.

After viewing the evidence in a light most favorable to the verdict, we find that a rational juror could have concluded that appellant exercised actual care, custody, control or management over the 21.26 grams of cocaine recovered by Officer Harrison. *See Evans,* 202 S.W.3d at 166. The State therefore met its burden of proving the essential elements of the charged offense beyond a reasonable doubt. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d). This renders the evidence legally sufficient to support ap-

pellant's conviction. *See Salinas,* 163 S.W.3d at 737. We overrule appellant's first issue.

**2. Factual Sufficiency of the Evidence**

In his second issue, appellant argues that the evidence is factually insufficient to show he possessed the 21.26 grams of cocaine recovered by Officer Harrison. When evaluating the factual sufficiency of the evidence, we view all the evidence in a neutral light and may set aside a verdict only if we are able to say, with some objective basis in the record, that a conviction is clearly wrong or manifestly unjust because the great weight and preponderance of the evidence contradicts the verdict. *Watson v. State,* 204 S.W.3d 404, 414, 417 (Tex.Crim.App.2006). We cannot order a new trial simply because we disagree with the fact-finder's resolution of an evidentiary conflict, and we do not intrude on the fact-finder's role as the sole judge of the weight and credibility of witness testimony. *See id.* at 417; *Fuentes v. State,* 991 S.W.2d 267, 271 (Tex.Crim.App. 1999). In our review, we discuss the evidence appellant contends is most important in undermining the fact-finder's decision. *Sims v. State,* 99 S.W.3d 600, 603 (Tex.Crim.App.2003).

Appellant points to conflicting evidence presented at trial regarding who possessed the cocaine recovered from appellant's vehicle. Appellant and appellant's wife testified that the cocaine did not belong to appellant. Appellant's wife stated that there were no drugs in her jacket when appellant took the vehicle to pick up Sheppard and Hollie. When asked who he believed the drugs belonged to, appellant stated that Hollie likely put them in the jacket.[4] Officer Harrison, however, testi-

---

3. Appellant had $609 in his possession when he was arrested.

4. According to appellant's testimony, Hollie was a known drug user who had spent time in drug rehabilitation programs.

fied that appellant was the only occupant of the vehicle who claimed ownership of the cocaine, and the jury was able to view a video recording of the traffic stop and hear appellant's statements to Officer Harrison. Appellant also argues that Sheppard and Hollie had easier access to the cocaine than appellant. Officer Harrison agreed that appellant was as far away from the jacket as anyone in the vehicle. While either Sheppard—the vehicle's front passenger—or Hollie—the vehicle's rear passenger—may have been in closest proximity to the cocaine, the jury could reasonably infer that the drugs were well within appellant's reach from the driver's seat. See Irons v. State, No. 06–06–00192–CR, 2007 WL 1362639, at *2–4 (Tex.App.-Texarkana May 10, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding contraband discovered under several jackets in vehicle's back seat was accessible to appellant, the vehicle's front passenger, and finding the logical force of the evidence linked appellant to the contraband even though the vehicle's driver testified the contraband belonged to him and that appellant did not know the contraband was in the vehicle).[5]

■ The jury bears the responsibility for resolving conflicts in the evidence and is free to accept or reject any or all of the evidence presented by either side. See Lancon v. State, 253 S.W.3d 699, 706 (Tex. Crim.App.2008); Johnson v. State, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). Based upon the verdict, the jury chose to disbelieve any testimony that appellant did not possess the drugs or know the contraband was in the vehicle. The jury was in the best position to evaluate the credibility of the witnesses, and we afford due deference to this determination. See Marshall v. State, 210 S.W.3d 618, 625 (Tex.Crim.App. 2006).

Appellant acknowledged telling Officer Harrison, "Yeah, I'll take the charge," when asked if the drugs were his but argues that the jury could have interpreted this statement in several ways. In addition to interpreting appellant's response as an incriminating statement, appellant contends that the jury could have believed he only claimed ownership of the cocaine because he did not want all three of the vehicle's occupants to be arrested. In deciding whether the evidence is sufficient to link contraband to the accused, the fact-finder is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. Poindexter, 153 S.W.3d at 406; Cuong Quoc Ly, 273 S.W.3d at 781. Where there are two permissible views of the evidence, the fact-finder's conclusion cannot be clearly erroneous. Evans, 202 S.W.3d at 163. In such a situation, the fact-finder chooses which view to accept. Id. at 165. The jury was free to conclude that appellant claimed ownership of the cocaine because it was his, rather than because he was did not want his acquaintances to be arrested. See Villarreal Lopez v. State, 267 S.W.3d 85, 100–01 (Tex.App.-Corpus Christi 2008, no pet.) (observing that appellant's statement of "Who point the finger?" to police could be interpreted as an innocent or incriminating statement and declining to reevaluate the weight the jury gave the statement in arriving at a guilty verdict).

5. See also, e.g., Medina, 242 S.W.3d at 576–77 (concluding evidence of contraband discovered in vehicle engine compartment and appellant's possession of scales was sufficient to link appellant to contraband although contraband was found in driver's purse and not in any of appellant's belongings); Flores v. State, No. 07–06–0349–CR, 2007 WL 2990543, at *2–3 (Tex.App.-Amarillo Oct. 15, 2007, no pet.) (mem. op., not designated for publication) (stating jury could conclude appellant, the driver, could easily reach pocket behind passenger's seat where drugs were found).

Appellant further argues that although there are evidentiary links between appellant and the cocaine, "the links not present here are far stronger than the mere fact that [a]ppellant was driving a truck in which drugs were found."[6] While the absence of several links may weigh in appellant's favor, each case must be determined on its own facts, and factors that contribute to the sufficiency of the evidence in one situation may be of little value under different facts. *Roberson*, 80 S.W.3d at 736. We conclude that the links established by the evidence in this case are sufficient to support a finding that appellant knowingly possessed the 21.26 grams of cocaine recovered by Officer Harrison.

After examining the entire record in a neutral light, we cannot say that the great weight and preponderance of the evidence contradicts the jury's verdict or that appellant's conviction is clearly wrong or manifestly unjust. The evidence is therefore factually sufficient to support appellant's conviction. *See Watson*, 204 S.W.3d at 414, 417. We overrule appellant's second issue.

### 3. State's Notice of Enhancement Allegations

■ The State sought to use four prior convictions to enhance appellant's punishment in this case.[7] The indictment charg-

ing appellant included allegations that appellant had previously been convicted of three felony offenses, including:

- a June 23, 1994 conviction in cause number W–94–CR–023 in the United States District Court, Western District of Texas, for felony possession with intent to distribute cocaine ("Enhancement Allegation One");
- a November 17, 1994 conviction in cause number 8245–A in Limestone County, Texas, for felony aggravated assault on a peace officer ("Enhancement Allegation Two"); and
- a December 8, 1994 conviction in cause number 14,026–CR in Houston County, Texas, for felony unlawfully carrying a weapon on a licensed premises ("Enhancement Allegation Three").

Prior to trial, the State filed a notice of intent to also use, for enhancement purposes, a July 28, 1993 conviction in cause number 7889–A in Limestone County, Texas, for possession of a controlled substance ("Enhancement Allegation Four").

Appellant asserts in his fourth issue that the State failed to provide pre-trial notice of its intent to use Enhancement Allegation Four. However, the supplemental clerk's record provided for our review reflects that the State filed a notice of intent in the trial court on October 23, 2007,

---

6. Appellant points to the following links not established by the evidence: the contraband was not in plain view, appellant was not under the influence of narcotics when arrested and no other contraband was found, appellant did not attempt to flee or make furtive gestures, there was no odor of contraband or drug paraphernalia present, there were no fingerprints on the bag containing the cocaine, there were no drugs found in areas "private" to appellant, appellant's name did not appear on any documents related to the cocaine, the cocaine was not found on the same side of the car as where appellant was sitting, and appellant was not stopped in a suspicious area or under suspicious circumstances.

7. Possession of between four and two-hundred grams of cocaine is a second-degree felony punishable by imprisonment for any term between two and twenty years. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d); TEX. PENAL CODE ANN. § 12.33(a) (Vernon Supp. 2009). If a defendant convicted of a second-degree felony is shown to have been once before convicted of a felony, the defendant "shall be punished for a first-degree felony." TEX. PENAL CODE ANN. § 12.42(b) (Vernon Supp. 2009). A first-degree felony is punishable by imprisonment for life or for any term between five and ninety-nine years, as well as a fine not to exceed $10,000. *Id.* § 12.32 (Vernon Supp.2009).

nearly six months before appellant's trial. The State's notice identified the offense of conviction, trial cause number, convicting court, and date of conviction. This provided appellant with sufficient information to allow appellant to find the record of former conviction and prepare for trial concerning whether appellant is the same person named in the prior judgment. *See Pena v. State*, 191 S.W.3d 133, 144 (Tex. Crim.App.2006). Appellant was therefore provided with adequate notice of the State's intent to use Enhancement Allegation Four. *See Villescas v. State*, 189 S.W.3d 290, 295 (Tex.Crim.App.2006) (concluding notice received thirteen days prior to defendant's punishment hearing constituted adequate notice); *Hines v. State*, 269 S.W.3d 209, 217 (Tex.App.-Texarkana 2008, pet. ref'd, untimely filed; pet. ref'd [2 pets.] ) (finding adequate notice where motion to enhance was filed six days before trial). We overrule appellant's fourth issue.

### 4. Jury Charge Error

During appellant's second punishment trial, appellant pleaded "true" to Enhancement Allegations One, Two, and Three and "not true" to Enhancement Allegation Four. However, the punishment charge instructed the jury "to find 'True' the allegations of the enhancement paragraphs." In his third issue, appellant contends that he suffered egregious harm because the punishment charge instructed the jury to find Enhancement Allegation Four "true" after he entered a plea of "not true."

■ We employ a two-step process in analyzing alleged charge error. We first determine whether error exists in the charge. *See Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App.2003). Here, the punishment charge contains error because it instructed the jury to find each enhancement allegation "true" despite appellant's plea of "not true" to Enhancement Allegation Four. We next review the record to determine whether there is sufficient harm to necessitate reversal. *Id.*

■ The degree of harm necessary for reversal depends upon whether error was preserved. *Id.* After the punishment charge was read to the jury, the trial court asked both parties if there were any objections to the charge. Defense counsel replied "No, none, Judge." The State now contends that appellant waived any allegations of charge error by affirmatively stating there were no objections to the charge.[8] The Court of Criminal Appeals has resolved this issue adversely to the State. An affirmative statement of no objection to the jury charge is deemed equivalent to a failure to object. *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004); *see also Williams v. State*, 273 S.W.3d 200, 224 n. 86 (Tex.Crim.App.2008). In such situations, an appellant may raise jury charge error for the first time on appeal but may not obtain a reversal unless the error resulted in egregious harm. *Bluitt*, 137 S.W.3d at 53; *Ortiz v. State*, 144 S.W.3d 225, 231 (Tex.App.-Houston [14th Dist.] 2004, pet. ref'd).

■ Egregious harm is a difficult standard that must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex.Crim.App.2002); *Green v. State*, 233 S.W.3d 72, 78 (Tex. App.-Houston [14th Dist.] 2007, pet. ref'd). Egregious harm due to charge error exists

---

**8.** The State relies on several other appellate decisions holding that an appellant failed to preserve charge error by affirmatively endorsing the charge. *See McCain v. State*, 995 S.W.2d 229, 242–43 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd, untimely filed); *Ly v. State*, 943 S.W.2d 218, 220–21 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd); *Reyes v. State*, 934 S.W.2d 819, 820 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd); *McCray v. State*, 861 S.W.2d 405, 409–10 (Tex.App.-Dallas 1993, no pet.).

if the error affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Allen v. State*, 253 S.W.3d 260, 264 (Tex. Crim.App.2008). In sum, the error must have been so harmful as to effectively deny the accused a fair and impartial trial. *See Warner v. State*, 245 S.W.3d 458, 461 (Tex. Crim.App.2008); *Green*, 233 S.W.3d at 78. Neither party has a burden to show harm; rather, we review the record before us and make an independent assessment as to whether the jury's verdict was affected by the charge error. *See Warner*, 245 S.W.3d at 464; *Swearingen v. State*, 270 S.W.3d 804, 813 (Tex.App.-Austin 2008, pet. ref'd). In determining whether appellant suffered egregious harm, we consider (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of the probative evidence, (3) arguments made by counsel, and (4) any other relevant information revealed by the record as a whole. *Allen*, 253 S.W.3d at 264.

### a) Charge of the Court

Here, the punishment charge informed the jury that appellant had been found guilty of possession of cocaine and instructed the jury to assess appellant's punishment at imprisonment for any term between five and ninety-nine years or life. The jury could also assess a fine up to $10,000. This is the proper range of punishment for an enhanced second-degree felony conviction. *See* TEX. PENAL CODE ANN. §§ 12.32, 12.42(b) (Vernon Supp. 2009). The charge also authorized the jury to consider all the facts shown by the evidence during the guilt/innocence phase of trial and named the jurors as the exclusive judges of the facts and credibility to give any witness testimony, but bound the jury to follow the law contained in the charge. Additionally, the charge reiterated that the State bore the burden of proof throughout all stages of trial. The charge correctly recited appellant's pleas of "true"

to Enhancement Allegations One, Two and Three. After reciting appellant's plea of "not true" to Enhancement Allegation Four, the charge instructed the jury to find each of the enhancement allegations "true." Absent evidence to the contrary, we presume the jury understood and followed the court's charge and found Enhancement Allegation Four "true," despite appellant's plea to the contrary. *See Miles v. State*, 204 S.W.3d 822, 827–28 (Tex.Crim.App.2006). An erroneous jury charge, however, does not result in automatic reversal of a conviction. *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex.Crim.App. 1994); *Wood v. State*, 271 S.W.3d 329, 336 (Tex.App.-San Antonio 2008, pet. ref'd). While the charge in this case was clearly erroneous, our analysis of the remaining factors leads us to conclude that appellant did not suffer egregious harm.

### b) The State of the Evidence

We consider the state of the evidence at both the guilt/innocence and punishment phases of trial. *See Zarco v. State*, 210 S.W.3d 816, 824 (Tex.App.-Houston [14th Dist.] 2006, no pet.). During both phases of trial, appellant called several witnesses to testify that he was not involved with drugs and that he did not possess the cocaine found by Officer Harrison. According to these witnesses, appellant was a church-going man who was involved in several community youth activities. The State also presented much of the same evidence during each phase of trial. Officer Harrison testified at both phases and reviewed the circumstances leading to appellant's arrest. The State also introduced appellant's penitentiary packets for Enhancement Allegations One, Two, and Three into evidence at both phases of trial, as well as a copy of the trial court's "Judgment on Jury Verdict of Guilty" for Enhancement Allegation Four. During guilt/innocence, appellant admitted being convicted of the first three enhance-

ment offenses. Appellant also acknowledged being arrested for the offense referenced in Enhancement Allegation Four, but denied being convicted. Thus, at both phases of trial, appellant contested whether he had been convicted of the underlying offense contained in Enhancement Allegation Four.

 Appellant maintains he was egregiously harmed by the error in the charge because the State failed to prove that he was convicted of the offense referenced in Enhancement Allegation Four. Because appellant pleaded "not true" to Enhancement Allegation Four, the State was required to prove beyond a reasonable doubt that the alleged prior conviction existed and that appellant was linked to the conviction. *See Flowers v. State*, 220 S.W.3d 919, 921 (Tex.Crim.App.2007); *Kucha v. State*, 686 S.W.2d 154, 155 (Tex. Crim.App.1985).[9] The State may satisfy its burden of proof in a number of ways, including (1) documentary proof, such as a judgment, that contains sufficient information to establish both the existence of a prior conviction and the accused's identity as the person convicted and (2) the testimony of a witness who personally knows the accused and the fact of his prior conviction and identifies him. *See Flowers*, 220 S.W.3d at 921–22; *Davis v. State*, 268 S.W.3d 683, 716 (Tex.App.-Fort Worth 2008, pet. ref'd). Any type of evidence, documentary or testimonial, can suffice. *See Flowers*, 220 S.W.3d at 922.

Here, the State presented documentary evidence naming "Christopher Roberts" as the individual convicted in Limestone County on July 28, 1993, in cause number 7889–A for possession of a controlled substance, namely cocaine. Appellant denied being convicted in cause number 7889–A, but did acknowledge being arrested for the underlying offense. To show that appellant had been convicted in cause number 7889–A, the prosecutor asked Officer Mike Bell, formerly with the Mexia Police Department, the following question during the punishment phase:

> [Prosecutor]: Do you have any knowledge of his [appellant's] conviction on 7/28/93 for possession of a controlled substance, cocaine, there in Limestone County?
>
> [Officer Bell]: I do know that he was convicted, yes, sir.

Officer Bell further testified that he knew appellant and had dealt with appellant in multiple narcotics and assault investigations while employed with the Mexia Police Department.[10]

We conclude that these facts, when viewed together, sufficiently establish appellant's identity as the person who committed the offense referenced in Enhancement Allegation Four. *See id.* at 923 (concluding the links between an accused and a prior conviction are sufficiently proved when the totality of the evidence

9. The State's burden of proof for Enhancement Allegations One, Two, and Three was satisfied by appellant's plea of "true" to these allegations. *See Ford v. State*, 243 S.W.3d 112, 117 (Tex.App.-Houston [1st Dist.] 2007, pet. ref'd).

10. Appellant contends Officer Bell's testimony does not sufficiently link appellant to Enhancement Allegation Four because the evidence does not demonstrate that Officer Bell was present when appellant was convicted on July 28, 1993. *See Flowers*, 220 S.W.3d at

921–22 (noting that a defendant may be linked to a prior conviction through "testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person"). Testimony by a person who was not present when the accused was convicted of the prior offense may be sufficient to link the accused to the prior offense, however, so long as the person has personal knowledge of the accused and the prior conviction. *See Davis*, 268 S.W.3d at 716.

establishes the existence of the prior conviction and the defendant's identity as the person convicted); *see also Jones v. State*, 500 S.W.2d 661, 664–65 (Tex.Crim. App.1973) (finding testimony by prosecuting attorney that he knew appellant had been convicted in a previous case was sufficient to prove the prior conviction, although the prosecuting attorney was not the prosecutor in the previous case); *Davis*, 268 S.W.3d at 716–17 (determining a judgment naming appellant as individual previously convicted and testimony by appellant's ex-wife that she had personal knowledge of appellant's prior conviction was sufficient to prove the prior conviction). Because the evidence is sufficient to support a finding of "true" regarding Enhancement Allegation Four, the state of the evidence does not weigh in favor of a finding of egregious harm.

### c) Jury Arguments

■ During closing argument at the punishment phase, the prosecutor urged the jury to sentence appellant to "serious time" and "send a message" that drugs would not be tolerated in the community. The prosecutor also reviewed appellant's prior convictions and argued that appellant had not been truthful in pleading "not true" to Enhancement Allegation Four. This was followed by a discussion of why the punishment range available for the jury's consideration was imprisonment for life or five to ninety-nine years.[11] During this discussion, the prosecutor stated:

> ... under Texas law, if someone goes to the penitentiary and comes out, for a felony offense, and then picks up another felony, goes to the penitentiary and comes out, and then the third time, then

the minimum is going to be twenty-five years in the penitentiary.

> Now, in the present case, we have multiple prior felonies, but the time is also—the floor is not twenty-five. In other words, it's not a—the sentence is not finished and then comes back out and then starts another one, comes back out. So in this one, the—the penalty range is going to be five to ninety-nine years.

Appellant's defense counsel then made his closing statement. Counsel used the testimony of appellant's friends and family members to argue that appellant was no longer the "same person" who had committed the enhancement offenses listed by the State. Counsel also pointed to the long amount of time that had passed since appellant's prior convictions and the lack of evidence that appellant had "been in any trouble" since being released from prison. Finally, counsel urged the jury to assess punishment at five years' imprisonment, the minimum punishment allowed.

The prosecutor then gave a short rebuttal argument, arguing that appellant had not changed since being released from prison and asking the jury to "bring [appellant] to justice, to give him—to have the sentence that he deserves." The prosecutor closed with the following statements:

> Now, but for a technicality, he would be having a minimum floor of twenty-five years to ninety-nine. I think that's where your deliberations should start, at a minimum of twenty-five years, ninety-nine, and I hope that you can come up with a sentence somewhere in between those two.

Appellant asserts that these statements constitute "a blatant attempt to get the

---

11. Until the close of the guilt/innocence phase, the State sought to enhance appellant's punishment under Texas Penal Code section 12.42(d), which allows for punishment by imprisonment for life or between twenty-five and ninety-nine years. *See* TEX. PENAL CODE ANN. § 12.42(d). However, the State was unable to properly prove the finality and timing of the prior convictions as required by section 12.42(d).

jury to disregard the applicable law." *See, e.g., Whiting v. State,* 797 S.W.2d 45, 48 (Tex.Crim.App.1990) (stating it is error for the State to present a statement of the law that is contrary to that presented in the jury charge). Even if the prosecutor's statements regarding the "floor" of appellant's punishment constituted improper jury argument, appellant did not object at any time during closing argument or request an instruction to disregard the prosecutor's statements. *See Newby v. State,* 252 S.W.3d 431, 438 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd) ("Almost any improper argument may be cured by an instruction to disregard."). Additionally, the jury charge included the proper range of sentencing for the jury to consider: imprisonment for life or between five and ninety-nine years. The jury charge also instructed the jury to follow the law as provided by the charge. We presume the jury understood the jury charge and considered the entire range of punishment authorized by the charge, and there is no evidence that the jury failed to do so. *See Miles,* 204 S.W.3d at 827–28. For these reasons, a review of the jury arguments does not weigh in favor of a finding of egregious harm.

### d) Other Relevant Factors

Appellant urges us to consider the severity of the punishment assessed in determining whether appellant suffered egregious harm due to charge error. *See, e.g., Bolden v. State,* 73 S.W.3d 428, 432 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd) (reviewing the punishment assessed while analyzing alleged charge error). Upon proof that an accused has once before been convicted of a felony, the jury is free to assess punishment at imprisonment for life or for any term between five and ninety-nine years. *See* Tex. Penal Code Ann. §§ 12.32(a), 12.42(b); *cf. also Ex parte Chavez,* 213 S.W.3d 320, 323 (Tex.Crim.

App.2006) (recognizing the sentencer has virtually "unfettered" discretion to impose any punishment within the prescribed range). Here, the jury was presented with evidence that appellant had been previously convicted of four felony offenses. Appellant's punishment—fifty years' confinement—falls within the appropriate range of punishment, and thus does not weigh in favor of finding that appellant suffered egregious harm.

In light of the entirety of the jury charge, the state of the evidence, the arguments of counsel, and the record in general, we conclude that the trial court's erroneous punishment charge did not affect the very basis of the case, deprive appellant of a valuable right, vitally affect a defensive theory, or effectively deny appellant a fair and impartial trial. *See Allen,* 253 S.W.3d at 264; *Warner,* 245 S.W.3d at 461. Accordingly, appellant did not suffer egregious harm due to the punishment charge's erroneous instruction to find each of the enhancement allegations recited by the State "true" despite appellant's plea of "not true" to Enhancement Allegation Four. We therefore overrule appellant's third issue.

### III. Conclusion

After reviewing the record, we conclude that the evidence is legally and factually sufficient to support appellant's conviction. We also find that the trial court's charge to the jury did not cause appellant egregious harm and that the State provided appellant with constitutionally adequate notice of its intent to use prior convictions to enhance appellant's sentence. For these reasons, we overrule each of appellant's issues on appeal and affirm the judgment of the trial court.