Affirmed and Memorandum Opinion
filed September 21, 2010.

In
The

Fourteenth
Court of Appeals

NO. 14-09-00370-CR

NO.
14-09-00371-CR

 

Kenneth Ray
Robinson, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 184th District Court

Harris County, Texas

Trial Court
Cause Nos. 1119670, 1119671



 

MEMORANDUM OPINION 

A jury convicted appellant Kenneth Ray Robinson of
two counts of possession with intent to deliver a controlled substance and
sentenced him to sixteen years’ confinement in cause number 1119670 and ten
years’ confinement in cause number 1119671, the sentences to run concurrently. 
In two issues, appellant claims that the indictment in cause number 1119670 is
fundamentally defective and that the evidence to support both his convictions
is legally and factually insufficient.  We affirm.

I.  Background

In early June 2007, Houston Police Department (HPD)
undercover narcotics officers Jerry McClain and Michael Baccus were conducting
surveillance at the Safeguard Pharmacy located in Houston.  The officers were
watching for “pill crews” after receiving complaints of possible illegal
narcotics activity at the location.  According to the officers, a “pill crew”
generally consists of a “crew leader” who hires indigent or homeless people to
pose as legitimate patients requiring medication.  The crew leader takes the
“patient” to a clinic where the doctor will issue a prescription with little or
no medical information.  The patient then gets the prescription filled, usually
at smaller, independent pharmacies, and delivers the prescription medication to
the crew leader in exchange for cash.  The pills are then packaged for
distribution on the street.

At trial, Officers McClain and Baccus testified that
they noticed appellant in a red Toyota Camry in the parking lot of the
pharmacy.  They saw him receiving prescription bags from several pharmacy
patrons.  They also saw him place several bags of prescription medications in
the trunk of his car underneath the trunk liner.  After watching these
individuals deliver their prescriptions to appellant, the officers saw
appellant leave the pharmacy parking lot.  Shortly after driving away from the
pharmacy, appellant changed lanes without signaling, and a marked patrol unit
pulled him over.  The patrol officers determined that appellant and one of his
passengers, Rena Woods, had outstanding warrants.  The other passenger, Sylvia
Imihire, had a possible parole violation.  All three were arrested.

McClain and Baccus arrived at the scene of the
traffic stop and conducted an inventory search of the vehicle.  The officers
testified that they discovered six prescription bags concealed in the trunk
underneath the liner.  Each bag contained one bottle of Hydrocodone (dihydrocodeinone)
and one bottle of Xanax (alprazolam).  None of the prescriptions were in
appellant’s or Woods’s name.  One of the prescription bags, however, was issued
to Imihire.  A wallet, belonging to Woods, which contained around $4,000 in
cash, was also discovered.  Both officers testified that they never saw
appellant exchange money with any of the individuals who delivered the
prescriptions to him.  An HPD criminalist confirmed the weight and type of the
drugs.

Appellant’s mother testified that all the individuals
to whom the prescriptions had been issued were either family members or
friends.  Appellant testified that his brother’s girlfriend, Rena Woods, called
him early in the morning on June 5; she claimed she was sick and needed him to
take her to the doctor.  Appellant agreed, and Woods picked him up at around
9:00 a.m. at his house.  Appellant explained that he drove Woods and Sylvia
Imihire to a doctor’s office.  According to appellant, another car, with the
five other people to whom the prescription medications found in appellant’s
trunk were issued, also went with appellant to the same doctor.  Appellant and
Woods waited outside the doctor’s office for two hours for the six individuals
to complete their visits with the doctor.  Even though she was sick, Woods did
not see the doctor that day.

Appellant testified that after leaving the doctor’s
office, he and the driver of the other vehicle drove to the Safeguard
Pharmacy.  Appellant and Woods again waited in the car while the passengers
went inside the pharmacy.  Appellant claimed that each of the prescription
holders passed their prescription bags to Woods, not to him.  He admitted that
he placed the bags in the trunk of the car; however, he stated that he did not
place them under the lining or conceal them in any way.  He further testified
that he planned on meeting with the prescription holders, all of whom he knew
and all of whom were sick (although appellant could not describe any symptoms
of their illnesses), to give them their prescriptions.  He was unable to give
them their medications, however, because he was stopped by the police officers
for the traffic violation.

The jury charge authorized the jury to convict
appellant as either a principal or party.  The jury found appellant guilty and,
after a punishment hearing, sentenced him to sixteen years’ confinement for
possession with intent to deliver over 400 grams of dihydrocodeinone[1] and to ten
years’ confinement for possession with intent to deliver between 28 to 200 grams
of alpazolam. [2] 
This appeal followed.

II.  Analysis

1.         Sufficiency
of the Indictment

In his first issue, appellant asserts that the indictment
in cause number 1119670, possession with intent to deliver dihydrocodeinone, is
fundamentally defective because it failed to allege each and every element of
an offense.  However, appellant made no objections to the sufficiency of the
indictment before the start of his trial. 

If the defendant does not object
to a defect, error, or irregularity of form or substance in an indictment or
information before the date on which the trial on the merits commences, he
waives and forfeits the right to object to the defect, error, or irregularity
and he may not raise the objection on appeal or in any other postconviction
proceeding.

Tex. Code Crim. Proc. Ann. art. 1.14(b) (Vernon 2005).  Thus,
when an indictment alleges that (1) a person (2) committed an offense over
which the trial court has jurisdiction, the defendant is required to object to
defects before the date of trial, or he forfeits any complaint about its
sufficiency thereafter.  See Teal v. State, 230 S.W.3d 172, 178–80, 182
(Tex. Crim. App. 2007).  

Here, the indictment states:

The duly organized Grand Jury of Harris County, Texas,
presents in the District Court of Harris County, Texas, that in Harris County,
Texas, KENNETH RAY ROBINSON, hereafter styled the Defendant, heretofore on or
about JUNE 5, 2007, did then and there unlawfully, knowingly possess with
intent to deliver a controlled substance, namely, DIHYDROCODEINONE, weighing at
least 400 grams by aggregate weight, including any adulterants and dilutants.

The indictment alleges both a
person—appellant—and an offense—possession with intent to deliver a controlled
substance.  Therefore, because appellant failed to timely object, he has
forfeited any right to complain about defects in the indictment.  Accordingly,
we overrule his first issue.

2.         Legal
Sufficiency of the Evidence

            In his second
issue, appellant concedes that he exercised control over the medications
discovered in his trunk but asserts that the evidence is legally insufficient
to establish that he knew these medications were contraband.[3]  In other
words, appellant does not challenge the sufficiency of the evidence that he
possessed the medications,[4]
but challenges only the sufficiency of the evidence to establish that he
knowingly possessed contraband.  See, e.g., Poindexter v. State,
153 S.W.3d 402, 405 (Tex. Crim. App. 2005) (“To prove unlawful possession of a
controlled substance, the State must prove that:  (1) the accused exercised
control, management, or care over the substance; and (2) the accused knew the
matter possessed was contraband.”). 

When reviewing the legal sufficiency of the evidence,
we view the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found the essential elements of
the charged offense beyond a reasonable doubt.  Salinas v. State, 163
S.W.3d 734, 737 (Tex. Crim. App. 2005).  We do not ask whether we believe the
evidence at trial established guilt beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 318–19 (1979).  We may not re-weigh the evidence
and substitute our judgment for that of the fact finder.  King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000).  In our review, we afford great
deference to the fact finder’s responsibility to fairly resolve conflicts in
the testimony, weigh the evidence, and draw reasonable inferences regarding
basic to ultimate facts.  Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim.
App. 1996).  We presume the fact finder resolved any evidentiary conflicts in
favor of the prosecution and defer to that resolution.  Id. at 133 n.
13.  Finally, because appellant was charged as both a principal and a party to
these offenses, we will review the evidence to determine whether it is legally
sufficient under either theory.  Cf. Guevara v. State, 152 S.W.3d 45,
49, 52 (Tex. Crim. App. 2004) (“[W]hen the trial court’s charge authorizes the
jury to convict on more than one theory, as it did in this case, the verdict of
guilty will be upheld if the evidence is sufficient on any one of the
theories.”).

Appellant focuses his argument on whether he was
sufficiently “linked” to the contraband.  See, e.g., Evans v. State,
202 S.W.3d 158, 161–62 & n.9 (Tex. Crim. App. 2006) (discussing the
“affirmative links” rule, which is a shorthand phrase for the large variety of
circumstantial evidence that may establish knowing possession of
contraband); Roberts v. State, —S.W.3d—, 2010 WL 2301293, at *2 (Tex.
App.—Houston [14th Dist.] Jun. 10, 2010, no pet.) (“[P]resence or proximity
combined with other direct or circumstantial evidence (e.g. ‘links’) may be
sufficient to establish the elements of possession beyond a reasonable doubt.”). 
But because appellant has conceded that he exercised control over the
medications, i.e., that he knowingly possessed the prescription medications, this
discussion is not relevant to his contention that he was unaware that what he
possessed was contraband.  

Viewing the evidence in the light most favorable to
the jury’s verdict, appellant, accompanied by Rena Woods and Sylvia Imihire,
drove to a doctor’s office.  There, appellant and Woods waited in the car while
Imihire and five others, who met them there, went into the doctor’s office. 
Appellant and Woods waited for about two hours while these six individuals, all
related to or friends with appellant and his family, obtained identical
prescriptions for Xanax and Hydrocodone from this doctor.  Appellant then drove
Woods and Imihire to the Safeguard Pharmacy.  At the pharmacy, undercover
narcotics officers McClain and Baccus saw numerous individuals walk up to the
vehicle appellant was driving and hand him white prescription bags.  They also
saw appellant place these prescription bags in the trunk of the vehicle, underneath
the liner.  After appellant drove away from the pharmacy, he was stopped by a
marked patrol unit for failure to use a turn signal.  The three occupants of
the vehicle were arrested for various outstanding warrants.  After arriving at
the scene, McClain and Baccus performed an inventory search of the vehicle. 
They discovered six prescription bags, each containing one bottle of
Hydrocodone and one bottle of Xanax concealed underneath the liner in the trunk
of the car.  The bottles contained a total of 720 Hydrocodone pills and 360
Xanax pills.  The officers testified that it is common for “pill crews” to
illegally obtain narcotics with prescriptions issued to individuals posing as
legitimate patients.  Additionally, Officer Baccus testified, “Quantities in an
amount obtained in this fashion, through experience, that is usually packaged
up for later purposes for street level distribution.”[5]  None of
the prescriptions were issued to appellant or Woods.  The officers also found a
wallet belonging to Woods that contained around $4,000 in cash.

Although appellant testified that he did not know
that these medications constituted “contraband,” there is sufficient evidence
from which the jury could infer the contrary.  Moreover, based on the basic
facts described above, the jury could reasonably infer that appellant, as
either a principal or party, possessed both dihydrocodeinone and alprazolam
with the intent to deliver.  See Clewis, 922 S.W.2d at 133.  We
therefore overrule appellant’s second issue.

Having overruled appellant’s issues, we affirm the trial
court’s judgment.

 

                                                                                    

                                                                        /s/        Leslie
B. Yates

                                                                                    Justice

 

Panel consists of Chief Justice Hedges and Justices Yates and
Boyce.

Do Not Publish — Tex. R. App. P. 47.2(b).









[1]
Cause No. 1119670.





[2]
Cause No. 1119671.





[3]
Appellant states in his brief, “Appellant concedes he exercised control over
both the Hydrocodeinone and Alprazolam but he maintains on appeal, as he did at
trial, that he did not know the medications in his trunk were contraband.”





[4]
A person commits an offense if he knowingly or intentionally possesses with the
intent to deliver a material containing alprazolam (Xanax) without a valid
prescription.  See Tex. Health
& Safety Code Ann. §§ 481.114(a), 481.104(a)(2) (Vernon 2010).  A
person also commits an offense if he knowingly or intentionally possesses with
the intent to deliver a material containing dihydrocodeinone (Hydrocodone) without
a valid prescription.  See id. §§ 481.112(a), 481.102(3)(a).





[5]
Cf. Reed v. State, 158 S.W.3d 44, 49 (Tex. App.—Houston [14th Dist.]
2005, pet. ref’d) (stating that intent to deliver may be supported by evidence
of an appellant’s possession of a large amount of drugs and testimony from
narcotics officer that such a large amount is generally not for personal use).